UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JEREMY LAYMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PEORIA, ILLINOIS,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:18-cv-1269<br>)<br>)<br>)<br>) |

## ORDER & OPINION

This matter is before the Court to determine whether it will hear Plaintiff Jeremy Layman's action for declaratory judgment. Plaintiff alleges he was fired from the Peoria Police Department based on statements he made on social media. Plaintiff seeks a declaration that those statements were protected under the First Amendment. In reviewing, and rejecting, Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 5), the Court became concerned about pending parallel arbitration proceedings. (Doc. 8). Although the Court determined the arbitration proceedings do not make the suit unripe, the Court remained concerned and ordered the parties to brief the question of whether it was appropriate for this Court to hear the case. (Doc. 10 at 4–5). The parties have briefed the issue and the Court will now decide whether to exercise its discretion under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), to dismiss the case.

Plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. "[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of

litigants." *Wilton*, 515 U.S. at 286. The Court has decided to determine whether that discretion will be exercised at the outset to ensure efficient use of judicial resources. "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent on that court to proceed to the merits before staying or dismissing the action." *Id.* at 288 (noting the alternative would be "a wasteful expenditure of judicial resources").

The circumstances of this case are not the normal situation in which declaratory judgment is sought. Plaintiff is, in the parlance of declaratory judgment actions, the "natural plaintiff," which is to say that in a coercive action on this dispute, Plaintiff would remain the plaintiff and Defendant would remain the defendant. *See Hyatt Int't Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir. 2002). The parties are currently awaiting arbitration by a private arbitrator, apparently because Plaintiff desires the ability to sue for breach of contract under Illinois law. (Doc. 9 at 2–3). Plaintiff acknowledges that whether the speech was protected will be determined by the pending arbitration unless this Court chooses to hear his case. (Doc. 11 at 4). In considering whether to exercise its jurisdiction, the Court is particularly aware that the arbitration at issue was not only contractually agreed to, but also mandated as the default mechanism of dispute resolution by Illinois law. 5 ILCS 315/8 ("The collective bargaining agreement . . . shall provide for final arbitration . . . unless mutually agreed otherwise."). However, if Plaintiff had brought a coercive action seeking restoration to his position or damages, or both, under 42 U.S.C. § 1983, this Court would clearly have jurisdiction and be obligated to hear the case.

To determine if exercising jurisdiction to hear an action under the Declaratory Judgment Act is proper, several considerations are necessary: (1) whether the purposes of the Declaratory Judgment Act would be served; (2) whether federalism and the comity owed by the Court to States would be undermined by the exercise of federal jurisdiction; and (3) the enumerated factors considered by the Seventh Circuit in *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (quoting *Nationwide Mut. Fire. Ins. Co. v. Willenbrink*, 924 F.3d 104, 105 (6th Cir. 1991)).

The reformers who pushed Congress to enact the Declaratory Judgment Act sought to remedy three problems with traditional relief: (1) "the plight of a person embroiled in a dispute who . . . could not have the controversy adjudicated because the opposing party had the sole claim to traditional relief and chose not use it"; (2) avoiding harm to parties caused by traditional remedies "forcing them to wait an unnecessarily long time before seeking relief"; and (3) avoiding "the harshness of damage and injunctive awards" deterring parties from utilizing the legal system. Donald L. Doernberg & Michael B. Mushlin, *The Trojan Horse: How the Declaratory Judgment Act Created a Cause of Action and Expanded Federal Jurisdiction While the Supreme Court Wasn't Looking*, 36 UCLA L. Rev. 529, 552–53 (1989); *see also Med. Asur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010) ("The goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an early adjudication of the rights of parties."); 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998) (quoted in *Med. Assur. Co.*, 610 F.3d at 377) ("The remedy made available by the

Declaratory Judgment Act . . . relieves potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish while initiating suit at his leisure—or never.").

None of these goals would be met in the instant case. Plaintiff is not helplessly waiting below a Damoclean sword—he controls the pace of this litigation and could file for coercive relief in this Court at his leisure within the applicable statute of limitations. And Plaintiff is clearly not deterred by the harshness of coercive remedies since he is seeking reinstatement through labor arbitration. (Docs. 1 at 3, 12 at 1).

"If traditional remedies are sufficient . . . courts may properly dismiss a declaratory judgment claim, and if the alleged damage has already occurred, declaratory judgment is not appropriate." *Field v. Housing Auth. of Cook Cty.*, No. 17-cv-02044, 2018 WL 3831513, at *10 (N.D. Ill. Aug. 13, 2018); *see also Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969). An adjudication here would not be early; the alleged harm has occurred. Plaintiff urges that his damages are accruing, not past. (Doc. 11 at 4). However, it is not clear how a mere declaration would stop any continuing harm. To be sure, this Court has discretion to follow a declaration "after reasonable notice and hearing" with "[f]urther necessary and proper relief." 28 U.S.C. § 2202. Or, Plaintiff may be counting on the arbitrator applying a declaration from this Court in his favor. But regardless of these speculations about the future, a mere declaration would not end any harm Plaintiff is currently suffering.

Moreover, Plaintiff seems to be uncertain whether the allegedly protected statements are the sole basis for his termination. *Compare* (Doc. 1 at 1–2 ("Defendant

4

terminated Plaintiff's employment because of statements made on Facebook while Plaintiff was not performing work for the Defendant") *with* Doc. 11 at 3 ("The lion's share of the Defendant's justification for terminating the Plaintiff's employment was the content of his off-duty speech."")).[1] To the extent Defendant had a reason for terminating Plaintiff other than the speech at issue, the arbitration and any subsequent proceedings will still need to occur, so a declaratory judgment in this case will not spare Plaintiff the wait.

Additionally, an arbitration hearing is currently set for January 23, 2019. (Doc. 12 at 2). Were the Court to allow this case to continue, there is no guarantee that a decision would be reached before then. *See* CDIL-LR 7.1(D)(5)(2–3) (allowing a party defending against a motion for summary judgment 21 days to respond and the moving party 14 days from the date of response to file a reply).

In sum, the goals of the Declaratory Judgment Act would not be served by hearing this case. But the mere fact that a case is not being brought for the reasons envisioned by Congress does not, on its own, make the Court unwilling to hear cases pursuant to the Declaratory Judgment Act. The Court will therefore look to the other

---

[1] This case remains in the "motion to dismiss" phase insofar as discovery has not yet been completed, although the Court is considering this issue *sua sponte*. The Court is therefore presuming that the allegations in Plaintiff's complaint are true, as it would in reviewing a motion to dismiss under Rule 12(b)(6). *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016). However, a plaintiff's briefing may introduce new facts so long as they are consistent with the Complaint. *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996) *aff'd* 108 F.3d 129 (7th Cir. 1996); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). The Court reads Plaintiff's later claims as a possible consistent factual supplement, that although the statements Plaintiff claims were protected were a cause of his termination, they were not necessarily the sole cause.

two considerations to determine whether there are other factors which counsel abstention.[2]

"A judge asked to enter a declaratory judgment that as a practical matter will dispose of some other case should consider whether a multi-track course of litigation is the best way to resolve the dispute." *Klene v. Napolitano*, 697 F.3d 666, 669 (7th Cir. 2012). The "classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 988 (7th Cir. 2010). This case does not fall perfectly into the mold of the classic example. For one thing, the typical scenario is a case premised upon diversity jurisdiction rather than a case in which a question of federal law is presented. *Wilton*, 515 U.S. at 290. For another, the typical case presents a state court action, rather than an arbitration proceeding.

---

[2] The Seventh Circuit has explained that "using the term 'abstention' " in referring to the decision whether to hear a Declaratory Judgment Act case "is not entirely accurate, as it normally refers to a group of judicially-created doctrines" but "the Declaratory Judgment Act does not require the court to reach for a judicially-created abstention doctrine." *Med. Assur. Co.*, 610 F.3d at 378. The Seventh Circuit has not, however, offered another term to refer to the "discretion to decline to hear a declaratory judgment suit." *Id.* at 379; *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (using "abstention" to refer to the decision to decline to exercise jurisdiction under the Declaratory Judgment Act). This Court will, therefore, use the term "abstention" in this opinion to mean the decision to decline to exercise its jurisdiction, though jurisdiction lies, in light of concerns about the propriety of hearing the case. *See Abstention, Black's Law Dictionary* (10th ed. 2014) (defining "abstention" as, *inter alia*, "[a] federal court's relinquishment of jurisdiction when necessary to avoid needless conflict with a state's administration of its own affairs"); *cf.* 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or related to a case under title 11."). To be clear, the Court understands that this abstention is of a different species than the judicially created form and takes seriously the distinction the Seventh Circuit discussed in *Medical Assurance Co.*

6

The first issue is whether *Wilton* abstention applies to cases raising federal questions. The Court does not think the fact that Plaintiff has requested a declaration of federal law determinative. "A concern for comity underlies this doctrine." *Arnold*, 752 F.3d at 707. *Wilton* abstention is often thought of solely in terms of state courts having the ability to interpret their own law. *E.g. Wilton*, 515 U.S. at 283 ("[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." (quotation marks omitted)). "Notwithstanding the limits of *Wilton*, other authorities support federal court deferral to state court actions even when federal statutes are to be construed." *United Artists Theatre Circuit, Inc. v. FCC*, 147 F. Supp.2d 965, 979 (D. Ariz. 2000). The Court agrees with the District of Arizona that *Wilton* can apply with full force where a question of federal law is at issue. *Id.*[3] State courts are generally and strongly presumed to have concurrent jurisdiction over suits presenting questions of federal law. *Haywood v. Drown*, 556 U.S. 729, 735 (2009). It would vitiate the comity owed by federal courts to state courts if a federal court heard

---

[3] That this situation is rare is likely due to the ability of parties to litigate federal questions in federal court. A plaintiff may bring an action presenting a question of federal law in federal court, 28 U.S.C. § 1331, and a defendant may remove such a case to federal court if the plaintiff files in state court, 28 U.S.C. § 1441. Because declaratory judgment actions must be predicated on other jurisdictional statutes, even where the natural defendant is the plaintiff, *Rueth v. EPA*, 13 F.3d 227, 231 (7th Cir. 1993); *Cook Cty. Republican Party v. Sapone*, 870 F.3d 709, 711–12 (7th Cir. 2017), it is unusual—possibly impossible—to have an action pending in state court which raises a federal question and cannot be removed, but where a district court would nonetheless have jurisdiction over a declaratory judgment action. Indeed, in *United Artists Theatre Circuit*, the District of Arizona concluded that subject matter jurisdiction was lacking and considered the abstention grounds only as an alternative should the Ninth Circuit disagree with its first conclusion. 147 F. Supp.2d at 976.

a declaratory action that mirrored an ongoing state court proceeding solely on the grounds that the questions presented were federal.

This can be clearly seen by imagining a scenario in which a natural plaintiff files suit in state court, and the natural defendant misses the deadline to remove the case. *See* 28 U.S.C. § 1446 (providing a 30-day time limit for removal). If the natural defendant then filed a declaratory judgment action against the natural plaintiff in federal court solely for the effect of getting a declaration and the effects of *res judicata*, it seems clear that comity to the state court would recommend abstention. So too here. Assuming that the arbitration constitutes a parallel state court proceeding, discussed below, for this Court to step in would indicate a lack of comity regardless of the fact that the question implicates federal law rather than state law.

The second issue is whether the ongoing arbitration constitutes a parallel state proceeding under *Wilton*. "Declaratory relief, of course, may not be used to supplant the role of the arbitrator in interpreting the provisions of [a] contract." *Verizon New England, Inc. v. Int'l Bhd. Of Elec. Workers, Local No. 2322*, 651 F.3d 176, 190 (1st Cir. 2011). Plaintiff, however, is seeking to supplant the role of the arbitrator in interpreting the United States Constitution, as apparently incorporated into the contract. At least one court has assumed that a pending state arbitration could constitute a parallel state action. *The Hartford v. Keystone Automotive Operations*, No. 3:06-cv-465, 2007 WL 257915, at *1 (M.D. Pa. Jan. 29, 2007) ("[A] pending arbitration in state court" was not a parallel state court proceeding solely because it did not "deal with the same issues as the federal action.").

Neither party questions that the arbitration is parallel: it is on the same issues, between the same parties. It is not, however, an action filed in a state court, so it is not clear whether it is the type of parallel proceeding envisioned in *Wilton*. The Illinois statutory scheme underlying this arbitration is highly persuasive. Illinois sets arbitration as a default for grievances between public employers and employees under collective bargaining agreements, 5 ILCS 315/8, and mandates that any arbitration required by such agreement be exhausted before "suits for violations of agreements" be brought, 5 ILCS 315/6. From the parties' filings, the Court understands that the collective bargaining agreement at issue includes some language prohibiting officers from being fired for uttering protected speech. (Doc. 11 at 3, Doc. 12 at 6–7). Because Illinois law sets a path for dealing with such claims that goes through arbitration before it may be brought in court, and because a declaration from this Court would be a departure from that path, the Court concludes that the arbitration should be thought of as a parallel proceeding under *Wilton*. *See Gov't Emps. Ins. Co. v. MLS Med. Grp. LLC*, No. 12-7281, 2013 WL 6384652 at *6 (D.N.J. Dec. 6, 2013) ("The claim, though couched in the language of the Declaratory Judgment Act, at bottom requests that this Court disrupt the statutory scheme created by the [State] legislature mandating that disputes regarding claims for [personal injury protection insurance] benefits be decided in arbitration."). The Court declines to exercise its discretion on this ground.

Even if the arbitration proceeding does not constitute a parallel state proceeding, this Court would retain some discretion to decline to hear the case. *Med. Assur. Co., Inc.*, 610 F.3d at 379. Where there are no parallel state proceedings,

9

however, this Court's discretion may not be as broad. *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998–99 (8th Cir. 2005) (cited in *Med. Assur. Co., Inc.* 610 at 379); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144–46 (3d Cir. 2014). There are at least three sets of factors different circuits have advised district courts use in determining whether to exercise jurisdiction, but there is significant overlap. *Compare Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d at 998 *and Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (per curiam) *with United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) *and Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) *with Reifer*, 751 F.3d at 146 *with St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

The Seventh Circuit has adopted the Sixth Circuit's factors:

> "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*': (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and (5) whether there is an alternative remedy that is better or more effective."

*NUCOR Corp.*, 28 F.3d at 579 (quoting *Nationwide Mut. Fire. Ins. Co.,* 924 F.3d at 105); *Basic v. Fitzroy Eng'g, Ltd.*, No. 97-1052, 1997 WL 753336, at *6 (7th Cir. Dec.4, 1997). Given the overlap between the various different lists, and the fact that the lists are likely non-exhaustive, the Court will base its analysis on the factors quoted by the Seventh Circuit in *NUCOR*.

The *NUCOR* factors do not all point in the same direction. If this Court were to determine that Plaintiff's speech was protected, it remains unclear whether the parties would agree that Plaintiff's termination was unlawful. However while it

might not solve the issue completely, it would certainly clarify the legal relations at issue. Thus the first factor does not indicate how the Court should proceed, while the second factor supports hearing the case.

Procedural fencing is clearly occurring here. Plaintiff explains, in detail, why he believes a judge rather than an arbitrator should decide this question in the first instance. (Doc. 11 at 2). The third factor therefore points toward abstention. On balance, the fourth factor is a wash. As Defendant urges, the Court would be wading into a state system of arbitration and arbitration appeals were it to issue a declaration in this case. (Doc. 12 at 7). But, because Plaintiff could bring a First Amendment claim in federal court, *see Kristofek v. Village of Orland Hills*, 832 F.3d 785 (7th Cir. 2016), the Court would not be making a declaration in a way that would intrude upon state jurisdiction to decide a question. It is not clear, therefore, that issuing a declaration in this case would truly increase friction between state and federal courts.

The final factor is whether there is an alternative that is better or more efficient. The alternative remedy of going through arbitration and bringing any and all claims Plaintiff has in one suit would be more effective because the harm has already been suffered and that procedure would grant coercive relief. Additionally, simply bringing a coercive suit in this Court would provide a more effective remedy for Plaintiff than would a mere declaration because it could fully redress his harm, rather than entangling the Court in a state system of arbitration and labor grievance. In sum, the Court believes Plaintiff has two better remedies available—waiting for the state arbitration and bundling claims or bringing a coercive suit in this Court.

11

The Court concludes that providing declaratory relief would not only not serve the purposes of the Declaratory Judgment Act but could also undermine a state law scheme. To the extent that labor arbitration constitutes a parallel state proceeding, the Court would decline to hear the case on that ground. Even in its more limited discretion under the *NUCOR* factors, the Court believes the proper course of action is to not hear the case while arbitration is pending.

When a court declines to exercise jurisdiction under *Wilton*, the court may either stay the proceedings or dismiss the case. 515 U.S. at 288. Dismissal is appropriate here. If Plaintiff continues to press the claims following arbitration, it will either be in federal court—where declaratory judgment would be duplicative—or in state court—where declaratory judgment in federal court would run afoul of the comity owed to state courts. The Court will therefore dismiss this case.

## Conclusion

For the reasons stated, Plaintiff's request for Declaratory Judgment is DENIED. The case is DISMISSED with prejudice.

Case Terminated

SO ORDERED.

Entered this 8th day of November, 2018.

s/Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge